UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROOR INTERNATIONAL BV and
SREAM, INC.,

      Plaintiffs,

v.                                                                      Case No. 8:19-cv-439-T-24 AAS

GOOD TIMEZ III, LLC and
SERKAN GUL,

      Defendants.
_____/

## ORDER

This cause comes before the Court on Defendants' Motion for Partial Summary Judgment. (Doc. No. 20). Plaintiffs oppose the motion (Doc. No. 31), and Defendants have filed a reply (Doc. No. 34). As explained below, the motion is granted in part and denied in part.

**I. Background**

Plaintiffs allege the following in their complaint (Doc. No. 1): Martin Birzle is an award-winning designer and manufacturer of smokers' products. Since 1995, Birzle has marketed and sold such products using the trademark "RooR." RooR-branded products are internationally recognized, and the RooR brand is a leader in the industry.

Birzle was granted trademark rights to the "RooR" marks. Plaintiff Sream, Inc. is a company that has manufactured glass products and various smokers' products for nearly a decade. Since 2013, Sream has been the exclusive licensee for the "RooR" marks within the United States.

Specifically, in 2013, Birzle and Sream entered into a License Agreement, in which

Birzle granted Sream an exclusive license to use certain "RooR" marks in the United States for three years, with a one-year renewal. Sream was required to make royalty payments to Birzle during the initial three-year term. Birzle gave Sream all rights to sue to obtain injunctive relief and damages for past and future infringement of the trademarks.

Pursuant to the License Agreement, Birzle retained ownership of the trademarks, including the goodwill associated with them. Sream was required to only use the trademarks in accordance with Birzle's Brand Image Policy. Birzle had the right to inspect the quality of the products bearing the "RooR" marks and to approve or reject those products based on Sream's compliance with Birzle's quality control standards.

In 2015, Birzle and Sream amended the License Agreement in two ways. First, they changed the term of the agreement such that they deemed the initial term to have expired, the agreement then would continue for a five-year renewal period, and there would be an additional five-year automatic renewal of the agreement. Additionally, Birzle and Sream amended the language of the paragraph giving Sream all rights to sue for infringement of the trademarks. Specifically, the amendment provides that Birzle appoints Sream as its legal representative for the entire United States to police and enforce all rights in the trademarks.

On January 8, 2018, Birzle assigned to Plaintiff RooR International BV ("RIBV") all of his rights in the trademarks retroactively. Today, RIBV is the registered owner of these trademarks. Thereafter, Birzle, RIBV, and Sream entered into a Ratification Agreement, in which RIBV accepted and ratified the License Agreement (and amendment thereto) entered into between Birzle and Sream.

Plaintiffs RIBV and Sream contend that Defendants Good Timez III, LLC and Serkan Gul

(the owner, manager and/or operator of Good Timez) sold counterfeit products bearing the "RooR" mark. As a result, Plaintiffs filed suit against Defendants, alleging three claims. First, they assert a trademark infringement claim, pursuant to 15 U.S.C. § 1114. Second, they seek injunctive relief for the seizure of the goods involved in the trademark violation, pursuant to 15 U.S.C. § 1116(d). Third, they assert a false designation of origin and unfair competition claim, pursuant to 15 U.S.C. § 1125(a).

## II. Motion for Partial Summary Judgment

In the instant motion, Defendants argue that Sream lacks standing to pursue its trademark and injunctive relief claims under § 1114 and § 1116(d) in Counts I and II.[1] Additionally, Defendants argue that Sream cannot obtain statutory damages in connection with its claim under § 1125(a) in Count III. Accordingly, the Court will analyze both arguments.

### A. Standing[2]

Defendants argue that Sream lacks standing to pursue its trademark and injunctive relief claims under § 1114 and § 1116(d). A trademark registrant (or the registrant's legal representatives, predecessors, successors and assignees) has standing to pursue trademark claims. See Sream, Inc. v. Grateful J's, Inc., 2017 WL 6409004, at *3 (S.D. Fla. Oct. 13, 2017). However, for exclusive licensees, the standing inquiry focuses on whether the license amounts to an assignment. See id. at *3–4. One court has described standing for a licensee under § 1114 as

---

[1] Defendants do not challenge RIBV's standing to assert these claims, as RIBV is the registered owner of the trademarks.

[2] Defendants' attack on Sream's standing is really a facial attack on the Court's subject matter jurisdiction. The determination of whether Sream has standing does not require this Court to make factual findings, and the allegations in the complaint regarding Sream's standing are assumed to be true.

follows:

> With respect to a licensee, standing to sue depends largely on the rights granted to the licensee under the licensing agreement. Whether a transfer is an assignment or a license does not depend upon the name by which it calls itself but upon the legal effect of its provisions. A plaintiff . . . must show that its license amounts, in fact, to an assignment to establish entitlement to sue under Section 32(1) [of the Lanham Act]. [A]ssignment of a trademark under the Lanham Act requires (1) sale or transfer of all rights in the mark; and (2) assignment as well of the business's goodwill connected with the mark's use. On the other hand, when an agreement places obligations regarding the trademark on the alleged assignee and indicates that the trademark is owned not by the assignee but by the assignor, a court should read that agreement as a license and not as an assignment. Factors that courts consider include: (1) whether the license agreement imposes geographical limitations on the use of the trademark; (2) whether the agreement requires the licensee to maintain the trademark's quality and reserves [to the licensor] the right to monitor the licensee's product quality; (3) whether the rights and duties in the license agreement are inconsistent with assignment; and (4) whether the license agreement states that the licensor retains ownership of the trademark.

Id. (internal citations and quotation marks omitted).

Plaintiffs concede that Sream's license is not equivalent to an assignment. (Doc. No. 31, p. 3). However, they argue that Sream has more substantial rights than a non-exclusive licensee, and as such, Sream has standing to bring the trademark and injunctive relief claims as a co-plaintiff with RIBV, the registered owner. To support this argument, Plaintiffs rely on cases analyzing standing in patent cases. However, the law relating to standing differs in trademark and patent cases. See National Licensing Association, LLC v. Inland Joseph Fruit Co., 361 F. Supp.2d 1244, 1255 (E.D. Wash. 2004). This Court concludes that only a registrant (or the registrant's legal representatives, predecessors, or successors) or its assignee has standing to sue for trademark infringement, and as such, Sream lacks standing to sue for trademark infringement

4

as a co-plaintiff.  See Red River Bancshares, Inc. v. Red River Employees Federal Credit Union, 2019 WL 4727857, at *4 (W.D. La. Sept. 26, 2019)(finding that the trademark licensee lacked standing to sue under § 1114 for trademark infringement, either by itself or as a co-plaintiff with the registrant).

In the trademark context, "[w]here a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under § 32 [of the Lanham Act]." Inland Joseph Fruit Co., 361 F. Supp.2d at 1254 (citations omitted).  As a result, Sream lacks standing to sue for trademark infringement under § 1114.  See Roor Int'l BV v. Saleem, 2019 WL 4127282, at *3 (E.D. Tex. Aug. 12, 2019), *adopted by* 2019 WL 4081008 (E.D. Tex. Aug. 29, 2019).

Likewise, § 1116(d) provides for injunctive relief in the form of a seizure of the goods and counterfeit marks that violate § 1114(1)(a).  Because Sream does not have standing to pursue a trademark claim under § 1114, it does not have standing to pursue injunctive relief related to that claim under § 1116(d).  See id. at *4, *adopted by* 2019 WL 4081008.  Accordingly, the Court grants Defendants' motion to the extent that they seek dismissal of Sream's trademark claims under § 1114 and § 1116(d) for lack of standing.

**B.  Statutory Damages**

Next, Defendants argue that Sream cannot obtain statutory damages under § 1117(c) in connection with its false designation of origin claim under § 1125(a).[3]  Section 1117(a) provides

---

[3]Defendants have not (and cannot) argue that Sream lacks standing to pursue a § 1125(a) claim simply because it is not the trademark registrant or assignee.  See Saleem, 2019 WL 4127282, at *4; Sream v. Superior Discount, LLC, 2019 WL 1003053, at *4 (E.D. La. Mar. 1, 2019); Grateful J's, 2017 WL 6409004, at *5.  Standing for claims under § 1125(a) differs from claims under § 1114 and § 1116(d).

damages for violations of § 1125(a), which include: (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action. However, § 1117(c) provides the following:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect . . . to recover, instead of actual damages and profits under subsection (a), an award of statutory damages . . . .

15 U.S.C. § 1117(c).

Section 1116(d)(1)(B) provides a definition for the term, "counterfeit mark." Section 1116(d)(1)(A) provides injunctive relief for trademark claims made under § 1114(1)(a)—which, as discussed above, are claims that must be made by the trademark registrant or assignee. Defendants argue that the reference to § 1116(d) within the statutory damages provision of § 1117(c) acts to restrict the availability of statutory damages to claims made under § 1114(1)(a). In support of this contention, Defendants cite to Shell Co., Ltd. v. Los Frailes Service Station, Inc., 596 F. Supp.2d 193, 203 (D. Puerto Rico 2008).

This Court is neither bound by, nor persuaded by, the Shell case. The plain language of § 1117(c) shows that its reference to § 1116(d) is solely for the definition of the term counterfeit mark. Therefore, the Court denies Defendants' motion to the extent that they argue that Sream cannot obtain statutory damages under § 1117(c) in connection with its false designation of origin claim under § 1125(a).

**III. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion for Partial Summary Judgment (Doc. No. 20) is **GRANTED IN PART AND DENIED IN PART**: The

6

motion is granted to the extent that the Court dismisses Sream's claims in Count I and II for lack of standing; otherwise, the motion is denied.

**DONE AND ORDERED** at Tampa, Florida, this 7th day of October, 2019.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record